The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 23, 2020

## 2020COA73

## No. 19CA0191, *Aurora Public School District v. Stapleton Gateway LLC* — Eminent Domain — Deposits — Withdrawal of Deposits

A division of the court of appeals concludes, as a matter of
first impression and under the facts of this case, that a
condemnation deposit withdrawn with the parties' consent from a
district court registry need not be immediately returned to the
registry when the condemnation is abandoned. Because the district
court retains jurisdiction over the deposit, the withdrawing party
may retain those funds until the condemnation damages proceeding
is completed but must return any excess beyond the party's actual
damages.

COLORADO COURT OF APPEALS$\qquad$**2020COA73**

Court of Appeals No. 19CA0191
Adams County District Court No. 16CV31107
Honorable Edward C. Moss, Judge

Aurora Public School District, a school district in the State of Colorado,

Petitioner-Appellant,

v.

Stapleton Gateway LLC, a Colorado limited liability company,

Respondent-Appellee.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Richman and Grove, JJ., concur

Announced April 23, 2020

Hamre, Rodriguez, Ostrander, & Dingess P.C., Richard F. Rodriguez, Donald M. Ostrander, Denver, Colorado, for Petitioner-Appellant

Faegre Drinker Biddle & Reath, LLP, John R. Sperber, Sean J. Metherell, Denver, Colorado, for Respondent-Appellee

¶ 1    In this abandoned condemnation action, we are asked to decide whether a security deposit withdrawn from the court registry must be immediately returned to the court registry when the condemnation is abandoned and the award of damages arising from the abandonment is still pending.  Condemnor, Aurora Public School District (APS), appeals the district court's order denying its request for the deposit's immediate return to the court registry by condemnee, Stapleton Gateway LLC (Stapleton), after APS abandoned the condemnation.  Recognizing that the condemnation statute is silent on this issue and that the district court retains jurisdiction over the deposit pending the damages resolution, we hold that a district court retains discretion over the location of the deposit.  Under the particular circumstances of this case, Stapleton is not required to return the deposit to the court registry before resolving its claim for abandonment damages and, therefore, we affirm the court's judgment.

## I.    Factual and Procedural Background

¶ 2    Stapleton purchased a commercial property (property) that is adjacent to an APS school and parking lot.  The property covers a city block and supports multiple two-story office buildings

1

connected to warehouses. APS adopted a resolution to expand the school by purchasing Stapleton's property. When Stapleton refused APS's offers, APS filed a condemnation petition, but did not seek immediate possession of the property.

¶ 3 While the parties were scheduling the valuation trial, APS informed Stapleton that it would need to demolish the structures on the property no later than the spring of 2018. Therefore, APS requested "limited possession of the property" for any lawful purposes including, without limitation, surveying, testing, and inspecting the property. Consequently, the parties filed a stipulation for limited possession (stipulation) with the court that allowed APS, upon depositing $2.7 million into the court registry, to take limited possession of the property on April 1, 2018, several weeks before the valuation trial. The stipulation also allowed Stapleton to withdraw 100% of the deposit with notice to and consent from APS. APS deposited $2.7 million into the registry on December 19, 2017.

¶ 4 On January 3, 2018, Stapleton moved, with APS's consent, to withdraw $2.7 million from the registry. Three days later, the district court granted Stapleton's motion and ordered disbursement

of the entire deposit. Neither the stipulation, the motion to withdraw funds, nor the court's order allowing the withdrawal contained any provision limiting Stapleton's use of the deposit or provided for the money to be refunded in the event the condemnation was abandoned. Stapleton used the money to fund two new real estate purchases.

¶ 5     On February 7, 2018, APS notified Stapleton that it was abandoning the condemnation, and it filed a "Motion for Forthwith Order Directing Return of Funds" (forthwith motion) requesting that Stapleton return the $2.7 million deposit to the court registry. Stapleton moved to preclude abandonment under the equitable estoppel doctrine. The district court denied Stapleton's attempt to preclude abandonment, and a division of this court affirmed the district court's order. *See Aurora Pub. Sch. Dist. v. Stapleton Gateway LLC*, (Colo. App. No. 18CA1502 & 18CA1922, Oct. 31, 2019) (not published pursuant to C.A.R. 35(e)) (*cert. denied* Apr. 20, 2020).[1]

---

[1] The court's denial of Stapleton's attorney fees was also affirmed.

¶ 6 Thereafter, the parties filed a "Joint Motion and Stipulation Regarding Proceedings" (joint motion). In the joint motion, they agreed that Stapleton had a claim for abandonment damages and the right to pursue "all consequential damages associated with this Condemnation Action and APS's abandonment" in a separate action (damages case). The joint motion stated that Stapleton "will pursue such a claim seeking all consequential damages . . . in a separately filed case."

¶ 7 The joint motion also provided that one of the remaining issues for the court to decide was APS's forthwith motion for return of the $2.7 million. The court granted the joint motion, using the above-quoted language to describe Stapleton's obligation to file a separate case, and requested briefing on the forthwith motion.

¶ 8 After considering the parties' legal arguments, the district court denied APS's forthwith motion. Therefore, the narrow question we consider is whether, under these facts, Stapleton must return $2.7 million to the registry before the court determines abandonment damages as part of a separately filed case.

¶ 9 We answer that question "no" for three reasons. First, well-settled Colorado law recognizes that a condemnation deposit

functions as security for payment of damages suffered by a landowner due to abandonment. *Swift v. Smith*, 119 Colo. 126, 135, 201 P.2d 609, 613-14 (1948). Second, the district court retains jurisdiction and control over the deposit, whether it resides in the registry or remains invested in real estate. *See United States v. Miller*, 317 U.S. 369, 381 (1943). Third, section 38-1-105(6)(b), C.R.S. 2019, recognizes a relationship between the deposit and the total value of the condemned property and permits the court clerk to offset withdrawals from the deposit against compensation due or damages awarded to a condemnee in the event of abandonment of the condemnation proceeding. *See Johnson v. Climax Molybdenum Co.*, 109 Colo. 308, 310, 124 P.2d 929, 931 (1942) (citing *Denver & New Orleans R.R. Co. v. Lamborn*, 8 Colo. 380, 385, 8 P. 582, 585 (1885)). Therefore, as a practical matter, it makes little sense for Stapleton to incur additional expenses in selling the property that it acquired to replace the parcel that APS condemned just to return $2.7 million to the registry when Stapleton may be entitled to some of the deposit following the damages hearing. *See First Interstate Bank v. Tanktech, Inc.*, 864 P.2d 116, 121 (Colo. 1993) ("Common

5

sense suggests that this is a correct result . . . .").  Accordingly, we affirm the court's order.

## II.    Scope of the Appeal

¶ 10    Initially, we address the scope of this appeal.  APS argues at length in its opening brief that Stapleton must return the deposit to the registry because (1) the deposit cannot legally serve as security for abandonment damages and (2) there can be no damages since APS never took possession of the property.  However, the parties' joint motion belies these arguments because the parties agreed that Stapleton has a claim for abandonment damages and the right to pursue all consequential damages associated with the condemnation action, subject to APS's contrary argument.  Moreover, they agreed that all issues related to abandonment damages would be litigated in a separate damages case.  Therefore, we decline to address APS's legal arguments pertaining to damages, as they are beyond the scope of the narrow issue appealed.  *See Crown Life Ins. Co. v. Haag Ltd. P'ship*, 929 P.2d 42, 45 (Colo. App. 1996) (declining to address issue not presented to the trial court); *People in Interest of C.K.G. v. C.D.G.*, 505 P.2d 979, 982 (Colo. App.

1972) (not published pursuant to C.A.R. 35(f)) (declining to address issues outside the scope of appeal).

## III.   Condemnation Deposit

¶ 11    APS contends that Stapleton cannot retain the condemnation deposit and must return it to the court registry immediately. Beyond the legal arguments not properly before us, APS cites no authority for this contention but asserts that "it should not have to live unprotected for years and merely hope that Stapleton is still around and has the ability to repay the funds if the future damage claims are ultimately unsuccessful."  Because we agree with the district court's legal analysis, we affirm its judgment.

### A.   Standard of Review and Law

¶ 12    A court's interpretation of the eminent domain statutes presents a question of law that we review de novo.  *E-470 Pub. Highway Auth. v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000); *Palizzi v. City of Brighton*, 228 P.3d 957, 962 (Colo. 2010).

¶ 13    Section 38-1-105(6)(a) provides that a court may authorize a condemnor to take possession of the property it seeks to condemn if the condemnor deposits a sum with the court sufficient to pay the compensation when it is later ascertained.  "[T]he purpose of

requiring a deposit is to provide the [condemnee] with *security* for the payment of compensation and damages to be ultimately awarded." *City of Englewood v. Reffel*, 34 Colo. App. 103, 108, 522 P.2d 1241, 1244 (1974); *see also Swift*, 119 Colo. at 135, 201 P.2d at 613-14 (same). Withdrawals from the deposit are provisional, pending final ascertainment of compensation and damages. *Swift*, 119 Colo. at 135, 201 P.2d at 613-14; *City of Englewood*, 34 Colo. App. at 108, 522 P.2d at 1244.

¶ 14     As relevant here, section 38-1-105(6)(b) provides that,

> [u]pon proper application to the court or by stipulation between the parties, the [condemnee] may withdraw from the sum so deposited an amount not to exceed three-fourths of the highest valuation evidenced or testimony presented by the [condemnor] at the hearing for possession, unless the [condemnor] agrees to a larger withdrawal, if all parties interested in the property sought to be acquired consent and agree to such withdrawal. Any such withdrawal of said deposit shall be a partial payment of the amount of total compensation to be paid and shall be deducted by the clerk of the court from any award or verdict entered thereafter.

¶ 15     While the statute plainly permits the withdrawn funds to offset the compensation payment, our supreme court has long held that

8

the withdrawn funds may also be used to offset a landowner's damages flowing from the abandoned condemnation action. *See Lamborn*, 8 Colo. at 382, 8 P. at 583.

B.    Analysis

¶ 16    The district court determined that no Colorado law required the deposit's return to the court registry in advance of the damages determination. First, it noted that section 38-1-105(6) is silent regarding who should hold the deposit pending an abandonment or consequential damages determination. Next, it noted that one purpose of the deposit was to serve as security for any abandonment damages. And it found that it retained jurisdiction and control over the deposit under *Miller*. *See Miller*, 317 U.S. at 382 (district court "retain[s] jurisdiction" over a condemnation deposit pending a final damages determination). We agree with this analysis.

¶ 17    We are not persuaded by APS's assertion that the district court's reliance on *Miller* was misplaced because the court's *actual control*, as opposed to its *jurisdiction*, over the deposit is at issue. APS cites no authority to support this argument, nor have we found any. We have, however, found authority in other jurisdictions to

9

support Stapleton's contention that it may retain the deposit until damages are determined. *See People v. Weiss*, 133 P.3d 1180, 1187 (Colo. 2006) ("Although not binding as precedent, we may look to decisions of other jurisdictions for persuasive guidance on matters that are of first impression to us.").

¶ 18      In *Los Angeles Unified School District v. Wilshire Center Marketplace*, 108 Cal. Rptr. 2d. 691, 693 (Ct. App. 2001), the condemnor deposited approximately $48 million with the court. The condemnee withdrew the entire amount after the condemnor abandoned the condemnation but before the final damages determination. *Id.* Although the location of the withdrawn funds was not at issue, the condemnee retained possession of the entire deposit and did not return it to the court registry before damages were determined. *Id.* at 694. When roughly $3 million in damages was awarded, the court ordered the condemnee to return the $45 million excess. *Id.* This outcome is consistent with Colorado law, *Swift*, 119 Colo. at 135, 201 P.2d at 613-14, and the law of many other jurisdictions, *see Reynolds v. La., Ark. & Mo. Ry. Co.*, 26 S.W. 1039, 1039 (Ark. 1894); *City of Downey v. Johnson*, 145 Cal. Rptr. 298, 299 (Ct. App. 1978); *Kellett v. Dep't of Transp.*, 329 S.E.2d

514, 516 (Ga. Ct. App. 1985); *Dep't of Transp. v. New Century Eng'g & Dev. Corp.*, 454 N.E.2d 635, 637 (Ill. 1983); *Hunsaker v. Ky. Dep't of Transp., Dep't of Highways*, 239 S.W.3d 68, 70 (Ky. 2007); *La. ex rel. Dep't of Highways v. Busch*, 225 So. 2d 208, 210 (La. 1969); *St. Louis, Keokuk & Nw. R.R. Co. v. Knapp, Stout & Co.*, 61 S.W. 300, 305 (Mo. 1901); *Blecha v. Sch. Dist.*, 112 N.W.2d 783, 786 (Neb. 1962); *Oregon ex rel. Dep't of Transp. v. Montgomery Ward Dev. Corp.*, 719 P.2d 507, 510-11 (Or. Ct. App. 1986); *Sunbelt Props. v. Texas*, No. 08-02-00322-CV, 2003 WL 756718, at *3 (Tex. App. Mar. 6, 2003) (unpublished opinion). Indeed, Stapleton concedes that if damages are less than $2.7 million, it must return the excess to APS.

¶ 19 Significantly, APS consented to Stapleton's withdrawal of the entire deposit, attached no limitations to Stapleton's use of the deposit, stipulated that Stapleton had a claim for compensatory damages related to the condemnation action, and agreed to litigate those damages in a separate action. APS does not explain why Stapleton should now be required to incur the expense of placing the deposit back into the court registry, other than to reference its own ability to recover the money if it prevails in the damages

hearing. Absent some authority requiring this procedural requirement, we will not read it into section 38-1-105(6)(b). *Turbyne v. People,* 151 P.3d 563, 567 (Colo. 2007) ("We do not add words to the statute or subtract words from it.").

## IV. Conclusion

¶ 20    The judgment is affirmed.

JUDGE RICHMAN and JUDGE GROVE concur.